UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL CARGO LOSS PREVENTION, INC., <br><br>                              Plaintiff, <br><br>           -against- <br><br> MEDITERRANEAN SHIPPING CO. (USA) INC. and MEDITERRANEAN SHIPPING CO. S.A., <br><br>                              Defendants. | 23-CV-1312 (JGLC) <br><br> <u>**OPINION AND ORDER**</u> |

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff International Cargo Loss Prevention, Inc. ("Plaintiff") brings this action under the Carriage of Goods by Sea Act ("COGSA") against Mediterranean Shipping Company S.A. ("MSC"). On January 3, 2024, the Court granted in part and denied in part MSC's motion to dismiss (the "January 3, 2024 Order"). ECF No. 33. Before the Court is MSC's motion for reconsideration of the motion to dismiss decision. For the reasons stated below, MSC's motion for reconsideration is GRANTED.

## DISCUSSION

The Court assumes familiarity with the facts and procedural history of this case. *See Int'l Cargo Loss Prevention, Inc. v. Mediterranean Shipping Co. (USA) Inc.*, No. 23-CV-1312 (JGLC), 2024 WL 37072 (S.D.N.Y. Jan. 3, 2024).

MSC brings its motion for reconsideration under Local Rule 6.3, which provides that a "notice of motion for reconsideration or reargument of a court order determining a motion . . . shall be served with . . . a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." "Local Rule 6.3 permits a party to move for reconsideration based on matters or controlling decisions which counsel believes the

court has overlooked." *Space Hunters, Inc. v. United States*, 500 F. App'x 76, 81 (2d Cir. 2012) (internal quotation marks and citation omitted). "Thus, to be entitled to reargument and reconsideration, the movant must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion." *Dietrich v. Bauer*, 198 F.R.D. 397, 399 (S.D.N.Y. 2001).

MSC's main contention is that the Court erred in not considering email exhibits (the "Extension Emails") attached to its motion to dismiss, which MSC asserts were integral to Plaintiff's First Amended Complaint ("FAC"). *See* ECF No. 35 ("Def. Br.") at 1–4. MSC argues that because the Court, in the January 3, 2024 Order, found that the FAC incorporated Sea Waybill No. MEDUMQ297290 (the "Sea Waybill"), it should also have found that the FAC incorporates the Extension Emails demonstrating the parties' agreement to toll COGSA's one-year statute of limitations. *Id.* at 3.

If the Court agrees to consider the Extension Emails, MSC further argues that the Court should grant Defendant's motion to dismiss in full because the Extension Emails unambiguously demonstrate that the parties' agreed upon deadline for Plaintiff to file its Complaint was February 15, 2023 at 17:00 Central European Time, which Plaintiff missed. *Id.* at 5–7.

Having reviewed and reconsidered the FAC, the Court agrees that the Extension Emails are integral to the FAC and that the Court should have reviewed them. *See Int'l Cargo Loss Prevention*, 2024 WL 37072, at *2 ("[T]he Court may nevertheless consider a document outside of the complaint where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). By alleging that "Defendants' agreed to extend plaintiff's time for filing this Complaint for Damages until February 15, 2023," the FAC relies upon and incorporates MSC's

2

extension agreement, which occurred via the Extension Emails. Therefore, the emails are properly considered in the context of a motion to dismiss.

The Court now turns to the language of the Extension Emails and agrees with MSC that the deadline stated is not ambiguous. The Extension Emails state that MSC will grant Plaintiff an extension to file this suit up to "February 15, 2023 — 1700 (CET time)." *See* ECF No. 25-2 at 5. MSC contends that "CET" unambiguously refers to Central European Time, while Plaintiff believes CET refers to (or at least Plaintiff reasonably interpreted it as) Central Time. *See* Def. Br. 5–7; ECF No. 26 at 10–12. The Extension Emails are a tolling agreement between the parties, and as such, the Court applies contract interpretation principles in resolving this issue. *See SEC v. Cohen*, 332 F. Supp. 3d 575, 589 (E.D.N.Y. 2018).

Because Plaintiff disagrees with MSC's understanding of CET, it maintains that the term CET is ambiguous and therefore cannot be resolved on a motion to dismiss. *See* ECF No. 26 at 10. The question "of whether the contract is ambiguous is a question of law for the court*." L. Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010).[1] "Provisions in a contract are not ambiguous merely because the parties interpret them differently." *Match Grp., LLC v. Beazley Underwriting Ltd.*, No. 22-CV-4629, 2023 WL 3647370 (LGS), at *4 (S.D.N.Y. May 25, 2023) (quoting *Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.*, 668 N.E.2d 404, 406 (N.Y. 1996)). "A contract is unambiguous if the contract language has a definite and precise meaning and concerning which there is no reasonable basis for a difference of opinion." *Callahan v. Glob. Eagle Ent. Inc.*, No. 18-CV-8343 (PKC), 2019 WL 2325903, at *2 (S.D.N.Y. May 30, 2019) (cleaned up).

---

[1] Although neither party states that New York law controls the parties' extension agreement or provides any information regarding their agreement's choice-of-law, both parties rely on New York law in support of their argument. *See id.*; Def. Br. at 6. The Court interprets the parties' reliance on New York law to indicate their belief that New York law applies here.

Here, having reconsidered the issue, the Court agrees that "CET" has a "definite and precise meaning," which is Central European Time. Plaintiff has not introduced any support to conclude that CET is an ambiguous term, is an abbreviation for Central Time, or is ever understood to mean anything other than Central European Time.

"It is common practice for the courts . . . to refer to the dictionary to determine the plain and ordinary meaning of words to a contract," and numerous dictionaries confirm the Court's understanding. *10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 120 (2d Cir. 2011) (quoting *Mazzola v. Cnty. of Suffolk*, 533 N.Y.S.2d 297, 297 (2d Dep't 1988). The Oxford English Dictionary's entry for "Central European Time" specifies that it is "abbreviated CET." Central European Time, *Oxford English Dictionary*, https://www.oed.com/dictionary/central-european-time_n?tab=meaning_and_use#1191179050100 (last visited June 7, 2024). Similarly, Cambridge Dictionary's entry for "Central European Time" states that its abbreviation is "CET." Central European Time, *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/central-european-time (last visited June 7, 2024).

Neither the Oxford English Dictionary nor Cambridge Dictionary contain entries for "Central Time" and instead refer to that time zone as "Central Standard Time." *See* Central Standard Time, *Oxford English Dictionary*, https://www.oed.com/dictionary/central-standard-time_n?tab=meaning_and_use#1175652080 (last visited June 6, 2024); Central Standard Time, *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/central-standard-time (last visited June 6, 2024). Both dictionaries list "CST" as the abbreviation for Central Standard Time.

Because the Court finds that CET unambiguously means Central European Time, the Court agrees with MSC that Plaintiff's deadline to file its Complaint was February 15, 2023 at 17:00 Central European Time, or 11:00 a.m. Eastern Standard Time ("EST"). Plaintiff did not file the Complaint until 5:32 p.m. EST, outside of the agreed upon extension. *See, e.g.*, *Ewig Int'l Marine Corp. v. Schelde*, No. 95-CV-5602 (LAP), 1996 WL 389306, at *2–3 (S.D.N.Y. July 11, 1996) ("It is well-established that COGSA's one-year statute of limitations can be waived or tolled by an extension of time to sue . . . [which] can be made subject to conditions."). Accordingly, Plaintiff's Complaint is time-barred and is dismissed.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's motion for reconsideration and dismisses the Complaint. The Clerk of Court is directed to close this case.

Dated: June 7, 2024
      New York, New York

                                     SO ORDERED.

                                     *Jessica Clarke*

                                     JESSICA G. L. CLARKE
                                     United States District Judge